UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY VIOLA,

    Plaintiff,

    v.

FEDERAL DEPOSIT INSURANCE
CORP., *et al.*,

    Defendants.

Civil Action No. 18-2351 (JEB)

## MEMORANDUM OPINION

Incarcerated *pro se* Plaintiff Anthony L. Viola makes a clear request: show me the money. Or at least: show me where the money went. Convicted of wire fraud and ordered, along with several co-defendants, to pay restitution to assorted victims, Viola now seeks an accounting. As he and his co-defendants are jointly and severally liable, Viola wants to know what payments have been made and to whom. Plaintiff's claims hit several snags, however. For starters, he fails to show injury and thus lacks standing. His counts against each of the four Defendants also suffer substantive defects. As a result, the Court will dismiss the suit without prejudice.

**I.**     **Background**

On April 1, 2011, Viola was convicted of wire fraud and related charges in the U.S. District Court for the Northern District of Ohio. See ECF No. 12 (Fed. Def. MTD) at 2; see also United States v. Viola, 2011 WL 6749643, at *2 (N.D. Ohio Dec. 22, 2011). That court subsequently held him and five co-defendants jointly and severally liable for $2,649,865 in restitution to five victims of the fraud. See Fed. Def. MTD at 2; see also ECF No. 1 (Compl.), Attach. 1 at 1–6 (Restitution Order). Those victims included the Federal Deposit Insurance

1

Corporation and Argent Mortgage Company. See Restitution Order at 3. To execute the court's restitution order, the Bureau of Prisons has deducted between $25 and $50 from Viola's account every three months since September 2012. Id. at 8–10 (Inmate Financial Obligations); Fed. Def. MTD, Attach. 1 (Viola Payment History).

Viola alleges that in January 2018, he requested that each of the payees provide a current balance of his outstanding restitution debt. See Compl. at 1. He claims that they either ignored him or failed to confirm receipt of restitution payments. Id. Viola further alleges that he requested from the court a "full accounting" of his payments, but that the court "refused to provide the information." Id.

Unhappy with his lack of progress, on October 9, 2018, Plaintiff filed suit in this Court against the U.S. District Court for the Northern District of Ohio, the FDIC, BOP, and Argent. Although he does not delineate specific causes of action, he principally invokes 18 U.S.C. § 3664, the Mandatory Victims Restitution Act. Id. at 4. He seeks to obtain an accounting of his restitution payments, verification that his payments have reached the proper payees, and the amount remaining on all co-defendants' liability. Id. at 4–5. The three federal Defendants have now filed a collective Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Citigroup, Inc., as alleged successor to Argent, has filed a separate Motion to Dismiss under Rule 12(b)(6). See ECF No. 13.

## II.   Legal Standard

In evaluating Defendants' Motions to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)); see

also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. See Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted). For a complaint to survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

The standard to survive a motion to dismiss under Rule 12(b)(1) is less forgiving. Under this Rule, a plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear his claims. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). A court also has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)).

The Court is mindful that complaints filed by *pro se* claimants are held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). But "even a *pro se* complainant must plead 'factual matter' that permits the court to infer

'more than the mere possibility of misconduct.'" Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting Iqbal, 556 U.S. at 678). The Court therefore must dismiss a *pro se* complaint "where the plaintiff's complaint provides no factual or legal basis for the requested relief." Strunk v. Obama, 880 F. Supp. 2d 1, 3 (D.D.C. 2011) (internal citations omitted).

**III.     Analysis**

The Court, as it must, first considers Defendants' jurisdictional challenges, see Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 95 (1998), before exploring defects in Viola's claims against each Defendant.

   A.  Jurisdiction

The Government initially argues that the case is now moot because the Clerk has since provided Viola with a two-page payment history. Yet Plaintiff rejoins that this is insufficient, especially because it does not detail payments from his co-defendants. The Court need not spend time on this point, however, as a more basic obstacle blocks Viola's path — namely, lack of standing.

Article III of the United States Constitution limits the jurisdiction of federal courts to resolving "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. A party's standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan, 504 U.S. at 560. Standing therefore represents a "predicate to any exercise of [the Court's] jurisdiction." Florida Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996).

To maintain standing, a plaintiff must meet three criteria. First, he "must have suffered an injury in fact — an invasion of a legally-protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S.

at 560 (citations and internal quotation marks omitted).  Second, "there must be a causal connection between the injury and the conduct complained of — the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  Id. (alterations in original) (citation and internal quotation marks omitted).  Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Id. at 561 (citation and internal quotation marks omitted).  A "deficiency on any one of the three prongs suffices to defeat standing."  US Ecology, Inc. v. US Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).

Injury is the "[f]irst and foremost" of standing's three elements.  See Steel Co., 523 U.S. at 103.  To meet this requirement, a plaintiff must show that he has suffered a distinct harm.  See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982).  Such an injury, moreover, must be "concrete and particularized."  Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1545 (2016) (quoting Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 180–81 (2000)).  In other words, injury requires more than a statutory violation: plaintiffs must also show a "'concrete interest' that is 'de facto,' 'real,' and 'actually exist[s].'"  Owner-Operator Indep. Drivers Ass'n v. U.S. Dep't of Transportation, 879 F.3d 339, 343 (D.C. Cir. 2018) (quoting Hancock v. Urban Outfitters, Inc., 830 F.3d 511, 514 (D.C. Cir. 2016)).

Here, Viola has not demonstrated such a concrete injury.  He makes a conclusory statement that he "continues to be damaged" by the Government's acceptance of restitution payments "without any certainty of the amount of his liability and to whom it is being paid."  Compl. at 3.  But uncertainty alone is insufficient to show injury.  See, e.g., New England Power Generators Ass'n, Inc. v. FERC, 707 F.3d 364, 369 (D.C. Cir. 2013) ("It would be a strange

5

thing indeed if uncertainty were a sufficiently certain harm to constitute an injury in fact."). To the extent Viola alleges a violation of the MVRA, he still must show he has suffered a concrete injury that "actually exist[s]," Spokeo, 136 S. Ct. at 1548 — not that he is merely uncertain whether the Government is properly reimbursing his victims.

Viola, consequently, must show either that there is a likelihood he has overpaid, or that the lack of accounting is causing him some other concrete injury — *e.g.*, it affects how he pays the restitution. Yet he has pled neither. Indeed, his own submissions indicate that he has not come close to paying his full restitution balance. See Inmate Financial Obligations; see also Viola Payment History. In other words, his payments of a few hundred dollars are nowhere near the $2.5 million that is due, even when adding in the more than $88,000 he alleges his co-defendants have paid. See ECF No. 16 (Pl. Opp.) at 1. Likewise, Viola does not claim that the withholding of an accounting has affected the manner of his quarterly payments of $25 to $50. This is not to preclude standing in the future if, for instance, substantial payments are made by him or the others such that the full figure is in sight. As for now, however, Viola has not shown he has suffered any real harm here.

There is another potential avenue, however. Rather than argue direct injury, he could seek to show informational standing — that is, he might maintain that he has been deprived of information about his restitution payments to which he is entitled. Under the Supreme Court's holding in FEC v. Akins, 524 U.S. 11 (1998), a plaintiff "suffers an 'injury in fact' when [he] fails to obtain information which must be publicly disclosed pursuant to a statute." Id. at 21. The D.C. Circuit has since elaborated that "a denial of access to information can work an 'injury in fact' for standing purposes, at least where a statute (on the claimants' reading) requires that the information 'be publicly disclosed' and there 'is no reason to doubt their claim that the

6

information would help them.'"  Ethyl Corp. v. EPA, 306 F.3d 1144, 1148 (D.C. Cir. 2002) (quoting Akins, 524 U.S. at 21).  For informational standing to apply, however, the statute in question must specifically give the plaintiff a right to the sought information.  See Am. Soc. for Prevention of Cruelty to Animals v. Feld Entm't, Inc., 659 F.3d 13, 23 (D.C. Cir. 2011).

The difficulty for Viola here is that the MVRA contains no such information-disclosure requirement.  Section 3664(b) comes closest, by requiring the court to disclose its pre-sentence restitution report to the defendant.  That section, however, only requires disclosing one pre-sentence report; it plainly does not compel ongoing accounting to convicted defendants.  Id.  As nothing in the statute gives Viola an independent entitlement to the information, he cannot show informational standing.  See Feld, 659 F.3d at 23.  Showing no injury under any theory, Plaintiff lacks standing.

There is a further jurisdictional hurdle in relation to Plaintiff's suing the court itself.  It is "well established that federal district courts do not have jurisdiction to reconsider decisions of other federal courts."  Yi Tai Shao v. Roberts, 2019 WL 249855, at *14 (D.D.C. Jan. 17, 2019); accord Jung v. Bank of America, N.A., 2018 WL 6680579, at *5 n.7 (D.D.C. Dec. 19, 2018) (noting that "federal district courts do not have jurisdiction to reconsider decisions of other federal district courts"); Atchison v. U.S. Dist. Courts, 190 F. Supp. 3d 78, 88 (D.D.C. 2016) (noting that federal district courts "ha[ve] no subject matter jurisdiction to reconsider the decisions of other federal district courts").  As a corollary, federal district courts lack jurisdiction to "attack the judicial acts of a sister court" by ordering its clerks or staff to implement their judgements in a certain way.  See Atchison, 190 F. Supp. 3d at 88.  Plaintiff, consequently, has not sufficiently established subject-matter jurisdiction for the Court to proceed.

7

While one may sympathize with Viola's being left in the dark, he is not without remedy. The Clerk's Office has provided him with a detailed accounting of his payments and appears receptive to working with him to correct any errors. See Fed. Def. MTD at 5–6; ECF No. 18 (Fed. Def. Reply) at 2. And if Viola believes the Clerk's accounting to be inaccurate or incomplete, his best route to relief is through petitioning his sentencing court. See 18 U.S.C. § 3664(o); see also United States v. Villongco, 2016 WL 3747508, at *5 (D.D.C. July 11, 2016) (listing circumstances where sentencing court may modify restitution order).

B. Merits

Even if there were jurisdiction, the Court would have to dismiss Viola's suit because his claim against each Defendant is deficient.

1. *U.S. District Court*

A court (as well as its Clerk) retains absolute judicial immunity, and Viola thus fails to state a claim against either. It has long been established that "judges . . . are not liable to civil actions for their judicial acts." Stump v. Sparkman, 435 U.S. 349, 356–57 (1978) (citation omitted). Similarly, "[i]t is well established that judicial immunity 'extends to other officers of government whose duties are related to the judicial process,'" including court clerks. See Roth v. King, 449 F.3d 1272, 1287 (D.C. Cir. 2006) (quoting Barr v. Matteo, 360 U.S. 564, 569 (1959)); see also Hester v. Dickerson, 576 F. Supp. 2d 60, 62 (D.D.C. 2008) (denying injunctive relief because "[i]n this Circuit, absolute judicial immunity extends to clerks of the court") (citing Sindram v. Suda, 986 F.2d 1459, 1460–61 (D.C. Cir. 1993)). If court clerks were not immune from suit, "courts would face the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly[,] [would] vent their wrath on clerks, court reporters, and other judicial adjuncts." Sindram, 986 F.2d at 1461 (second alteration in

original) (internal quotation marks and citations omitted). Judges and clerks, however, have absolute immunity only for acts performed as part of the judicial process. They enjoy no immunity for "administrative" acts involving "supervising court employees" or "overseeing the efficient operation of a court." Forrester v. White, 484 U.S. 219, 229 (1988).

Viola challenges the Clerk's alleged refusal to provide him with a full accounting of all restitution payments. See Compl. at 1. First off, the court did eventually deliver to him an accounting of his payments, though he contests its accuracy and seeks further information. See Viola Payment History; Pl. Reply at 1. It is also unclear whether Viola is suing the Clerk, to whom he addresses his arguments, or the court itself, which he names in his Complaint. See Compl. at 2, 4. In any event, Plaintiff's claim deals with a judicial action taken — or not taken — by the Clerk in her judicial role. Court-ordered restitution payments are part of a court's ruling, and the way the Clerk goes about implementing that ruling is a judicial function shielded by judicial immunity. Cf. Sibley v. U.S. Supreme Court, 786 F. Supp. 2d 338, 344 (D.D.C. 2011) ("The clerk or deputy clerk's receipt and processing of a litigant's filings are part and parcel of the process of adjudicating cases.").

Monitoring court-ordered restitution is dissimilar to the types of administrative employment actions courts have found may give rise to liability. Viola cites Forrester v. White, a case that dealt narrowly with a judge's demotion and discharge of a probation officer. Id. at 221; see also Kurowski v. Krajewski, 848 F.2d 767, 775–76 (7th Cir. 1988) (holding judge's firing of public defenders because of their political beliefs was administrative act not protected by judicial immunity). Yet even if Viola's claim could be seen as similar to a request for public judicial records, this Court remains the wrong place for him to seek relief.

## 2. *FDIC and BOP*

Viola's claims against the FDIC and BOP are similarly barred — this time, by the doctrine of sovereign immunity. Under that doctrine, the federal government is subject to suit only upon its consent, which must be clear and unequivocal. See United States v. Mitchell, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). Such a waiver of sovereign immunity must be "unequivocally expressed" in a statute. Hubbard v. EPA, 982 F.2d 531, 532 (D.C. Cir. 1992) (*en banc*) (quoting United States v. Mitchell, 445 U.S. at 535, 538 (1980)).

Viola has failed to establish that sovereign immunity has been waived here. He appears to premise jurisdiction on a combination of 28 U.S.C. § 1331 (federal-question jurisdiction), 18 U.S.C. § 3664 (the MVRA), and 28 U.S.C. § 1361 (the Mandamus Act). See Compl. at 3–4. But none of these statutes waives sovereign immunity. See, e.g., Walton v. Fed. Bureau of Prisons, 533 F. Supp. 2d 107, 114 (D.D.C. 2008) (holding federal-question statute does not waive sovereign immunity); Stone v. Holder, 859 F. Supp. 2d 48, 52 (D.D.C. 2012) (same for MVRA); Washington Legal Found. v. U.S. Sentencing Comm'n, 89 F.3d 897, 901 (D.C. Cir. 1996) (same for Mandamus Act). As a result, this Court lacks subject-matter jurisdiction to hear the claims against the remaining federal Defendants.

To the extent the Administrative Procedure Act waives sovereign immunity even when not explicitly invoked, see Chamber of Commerce v. Reich, 74 F.3d 1322, 1328–29 (D.C. Cir. 1996), Viola is still out of luck because he fails to state a claim under the APA. That Act authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). But "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah

Wilderness All., 542 U.S. 55, 64 (2004). Viola does not point to any authority showing that the FDIC or BOP was obliged to provide him the information he seeks. Indeed, the MVRA makes clear that "[n]othing in this section . . . shall be construed to create a cause of action not otherwise authorized in favor of any person against the United States or any officer or employee of the United States." 18 U.S.C. § 3664(p). As Plaintiff cannot demonstrate that either agency failed to take a discrete action it was required to take, he does not state a claim against the FDIC or BOP.

### 3. *Citigroup/Argent*

Finally, Plaintiff seeks from "Argent Mortgage—successors—assigns" an accounting of all payments it has received on his behalf. See Compl. at 2. Citigroup, as alleged successor to Argent, responds with two arguments. First, it points out that Viola never named it as a Defendant or alleged that Citigroup was the legal successor to Argent. See ECF No. 13 (Citi MTD) at 3. Second, Citigroup notes that a fraud victim has no obligation to produce restitution accounting to the person ordered to pay such restitution. Id. at 4–5. The Court agrees on both counts.

First, Viola does not mention Citigroup in his Complaint. In his Opposition, he suggests that he intended to refer to Citigroup as the successor to Argent, although the bank never appears in the Complaint. See Pl. Opp. at 3. The Court appreciates that *pro se* claims are held "to less stringent standards than formal pleadings drafted by lawyers," Haines, 404 U.S. at 520, and Viola's Opposition did indicate that he understood Citigroup to be the successor to Argent, even if he never pled that fact. See Pl. Opp. at 3. But "even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" Atherton, 567 F.3d at 681–82 (quoting Iqbal, 556 U.S. at 678). Although he seems to have served

Citigroup with his Complaint, Viola nowhere named Citigroup a defendant. See Citi MTD at 2. As a result, his pleadings do not state a claim against that entity. Similarly, while Plaintiff names Argent in the Complaint, he neither served it nor argued in his brief that it is in any way liable to him.

Regardless of which entity he is suing, Viola has a second, bigger problem: he never pled facts sufficient to support a claim of liability against either one. The MVRA is quite clear that "[n]o victim shall be required to participate in any phase of a restitution order." 18 U.S.C. § 3664(g)(1). That system makes sense, as it would be irrational to allow a convicted fraudster to badger his former victim for an accounting of his payments.

For that reason, the court serves as an intermediary between Viola and his payees. Plaintiff has no direct relationship in the restitutionary process with any of them; as Viola himself recognizes, his dealings are with the court. See Compl. at 1 (requesting accounting of "restitution collected by the government"). The Complaint, therefore, is devoid of any plausible allegation that Citigroup or Argent owes a legal duty to provide an accounting to him. Even if Viola had standing, then, the Court would grant Citigroup's Motion to Dismiss for failure to state a claim.

## IV. Conclusion

For these reasons, the Court will dismiss Plaintiff's claims for lack of subject-matter jurisdiction. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: June 14, 2019